GOODWIN VS LYON.

4D 297
95  174

*As to the specific execution, in Chancery, of parol con-
tracts, for the sale of lands.
As to compensation, in such cases, for improvements.*

1. Chancery will not lend its aid to enforce the specific perform-
ance of parol contracts for the sale of lands, where the proof
of the terms of the agreement is uncertain and contradictory ;
or where the agreement proved, does not correspond with the
allegations of the bill.

2. Time may become an essential ingredient in the perform-
ance of a contract, for the sale of lands, so far as its specific
enforcement in a Court of Equity is concerned.

3. Thus, where it appears that a party seeking to compel a specific
performance of a parol agreement, for the sale of lands, has
failed to execute his part of the contract, at the day, without
excuse on his own part, or the assent of the other party, to
the delay, Chancery will not relieve him.

4. Thus, where A, in December, 1833, made a parol agree-
ment with B, for the purchase of lands, which B was to pur-
chase of an Indian reservee, under which contract B received
a horse valued at one hundred dollars, and was also to receive
one hundred dollars in December, eighteen hundred and thir-
ty-four, and the like sum in December 1835, and in December
1836 ; and after B did purchase, A entered upon the land and
made improvements, but made no offer of payment until January
or February 1835, (except an offer of the notes of a third person
due several years after the agreement was made,) and the
contract as disclosed by the bill was uncertain and contradic-
tory, and altogether disproved by the answer and proof ;—a
bill filed in Chancery for the object of enforcing a specific
performance, was dismissed with costs :—but without preju-
dice to an action at law, or suit in equity to recover back mo-
ney or property delivered upon the faith of the agreement.

5. Where a parol contract for the sale and purchase of lands is

4P.        38

made, upon the faith of which the vendee takes possession, and makes valuable and permanent improvements—though the specific execution of the agreement may not be enforced in equity, either because the agreement is imperfect, or its precise terms cannot appear,—Chancery will yet decree a pecuniary compensation, equivalent to the improvements made by the vendee.

6. But, where one applies for the protection of Equity in enforcing a specific execution of a parol agreement for the sale o f lands, and the answer and proofs disprove the case stated in the bill; and it appears that the party seeking the interposition of Chancery, has failed to comply with the terms of the contract, but is in default, and that the contract cannot be enforced,—Chancery will not decree compensation for improvements.

In error to a decree in Chancery, of the Circuit Court of Talladega.

This was a bill in Chancery, filed in the Circuit Court of Talladega, by Joshua Lyon; and its object was to enforce the specific execution of a parol agreement for the sale of lands.

The bill stated that on the twenty-sixth day of December, A. D. eighteen hundred and thirty-three, he contracted by parol with Thomas Goodwin, the defendant, for the purchase of the south half of section fifteen, in township seventeen, of range six.— That by the terms of the said contract, the said Goodwin was to receive of the complainant, a horse estimated at the price of one hundred dollars, and the additional sum of four hundred dollars, payable as follows:—one hundred dollars, payable on the twenty-fifth day of December, eighteen hundred and thirty-four; one hundred and fifty dollars, on the twenty-fifth day of December, eighteen hundred and

thirty-five; and one hundred and fifty dollars, on the twenty-fifth day of December, eighteen hundred and thirty-six: that accordingly, the said Goodwin was put in possession of the horse. The bill stated further, that the lands thus agreed to be purchased, were the reservation of an Indian, and that Goodwin had contracted with him for the purchase thereof, so soon as the formality of his location, under the Indian treaty had been completed. That it was however, agreed, that if the Indian was not located upon this particular tract of land, Goodwin was to discharge complainant from the payment of the aforesaid sum of four hundred dollars—retaining the horse for his trouble. That in January, eighteen hundred and thirty-four, complainant took possession of the said lands, and proceeded to make extensive improvements thereon. That in the month of January, eighteen hundred and thirty-four, complainant turned over to defendant, two hundred dollars in the notes of one Steed, which were to fall due about the time complainant's payments were to be made; which notes were received by defendant in part consideration of the aforesaid sale of the said lands. The bill then proceeded to allege, that the Indian had been regularly located upon the said lands; that he sold the same to Goodwin, and that the contract to the latter had been regularly certified and approved, as required under the treaty. That the lands having risen greatly in value, the said defendant refused to comply with his agreement, and make a title to complainant in pursuance thereof. That on the twenty-fifth December, eighteen hundred and thirty-four, complainant had made a tender to complainant's wife, of the remain-

ing two hundred dollars, and afterwards, in eighteen hundred and thirty-five, a like tender to defendant of the same amount, demanding the title aforesaid.— And the bill therefore prayed an enforcement of the contract, &c.

The answer of the defendant averred, that he had undertaken to sell to the complainant for the horse, mentioned in the bill, an *improvement*, upon the lands specified: that it was understood, when possession passed to the complainant, that nothing more than the right of occupancy was conveyed. He denied, that any such contract as stated in complainant's bill, was made; but stated that he agreed to let complainant have the land, if complainant would advance him two hundred dollars, to enable him to complete a contemplated purchase with the Indian, before mentioned; but he denied that any payment had been made to him. That two notes, drawn by Steed, were delivered to defendant by complainant; but they were only intended to secure, collaterally, a distinct debt, due to defendant by complainant.— Defendant further, denied a tender—stated that if made he would have refused it, as the complainant had never furnished the amount of money stipu-lated, and defendant had purchased the lands, and paid for them, with his own funds, and for his own purposes. He therefore, prayed to be discharged, &c.

The proof taken in the case established the facts, of an offer to pay, on the part of the complainant, two hundred dollars, in eighteen hundred and thirty-five, if defendant would make the title—that the horse was delivered, and that defendant had procur-

ed the title from the Indian. That the land had ris-
en considerably in value. That defendant frequent-
ly acknowledged having made the contract for a sale
of the land—two hundred dollars to be paid when
the land was located, and two hundred dollars, in
subsequent instalments,—and, that he had received
the horse, as the first payment, subject to the condi-
tion, that if he failed in procuring the Indian right,
the horse was to be retained, for his trouble.

The depositions taken by the defendant, also es-
tablished the fact, that the horse was given for the
claim only—and that if the money was not subse-
quently paid by complainant, it was to be no bar-
gain : and generally substantiated the allegations
made in the answer.

The Chancellor, on hearing, decreed in favor of the
complainant — vesting defendant's interest in the
land in complainant, and creating a lien on the same,
in favor of the payments agreed to be paid by com-
plainant. From this decree the defendant took his
writ of error.

*Chilton*, for the plaintiff in error.
*Peck*, contra.

COLLIER, J.—The defendant in error filed his
bill against the plaintiff, for the specific performance
of a parol agreement, for the sale of land.

In the bill it is stated that the parties made an
agreement for the purchase and sale of a half sec-
tion of land, situate in the Coosa land district, on
the twenty-sixth of December, eighteen hundred and
thirty-three, by which the plaintiff received of the

defendant, a horse, estimated at one hundred dollars, and was to receive one hundred dollars on the twenty-fifth December, eighteen hundred and thirty-four; one hundred and fifty dollars, on the twenty-fifth of December, eighteen hundred and thirty-five; and the further sum of one hundred and fifty dollars, on the twenty-fifth of December, eighteen hundred and thirty-six. In consideration of which the plaintiff stipulated to purchase the half section of land in controversy, of the Indian reservee, (who was expected to be located thereon, under the treaty of eighteen hundred and thirty-two,) if he could do so, and convey the title therein to the defendant. If the purchase could not be made of the Indian, the plaintiff was to retain the horse, for his trouble, and the defendant to pay nothing further.

The bill then alleges the location of the Indian; the purchase of him, by the plaintiff; the certificate of his deed, by the government agent, and its approval by the President. It is further stated, that in faith of the agreement, the defendant entered upon, and made valuable improvements on the land; and that the defendant paid the plaintiff two hundred dollars, in the notes of one Steed: and, in January, or February, eigteen hundred and thirty-five, tendered him two hundred dollars, and demanded a title, which was refused.

The answer denies the agreement set out by the bill—states that the respondent sold to the complainant an improvement, which he owned, on the half section of land, designated in the bill, for a horse, estimated at one hundred dollars; and at the same time agreed with him, that if he purchased the land, of the In-

dian reservee, he would convey the title to him, up-
on complainant's paying two hundred dollars, to en-
able him to complete the purchase from the reservee;
and two hundred dollars, in some short time thereaf-
ter—either of which sums the defendant denies the
receipt of.   He admits that he received two notes,
for the payment of one hundred dollars each, on
Steed; but insists that they were delivered to him,
as a collateral security, for a note of one hundred
dollars, which respondent held on complainant, due
some time previous to the notes of Steed.

Respondent admits that he refused to receive what
complainant informed him was two hundred dollars,
in specie, for the reason that the payments were not
made by him, as he had stipulated to do.

The answer admits the possession of the complain-
ant, and improvements made by him, yet relies upon
the statute of frauds, as a bar to relief.

The depositions taken at the instance of the com-
plainant, tend to prove a contract for the sale of the
particular land in dispute; but the terms are stated
by none of the witnesses, so as to enable us to deter-
mine what they were.   David Conner, in his deposi-
tion, states that he understood the land was to be
paid for by complainant, in eighteen hundred and
thirty-four, eighteen hundred and thirty-five, and
eighteen hundred and thirty-six; but how much each
payment was to be, and what time in each year to
be made, we are not informed.—Yet, the witness
comes nearer to proving the precise terms of a con-
tract, than any one examined by the complainant.

It appears sufficiently, that the sum to be given for
the land, if purchased by the complainant, was four

hundred dollars, exclusive of the sum at which the horse was estimated—that the respondent became, the purchaser of the *Indian reservee*, and had the contract certified to him, in the spring of eighteen hundred and thirty-four.

For the respondent, the deposition of Jesse Duren, (a witness to whom both parties communicated the terms of their agreement,) proves the contract to have been such as the respondent discloses in his answer—that the parties repeated. the agreement in his presence, that he might bear witness to it. This witness is sustained by several others, whose testimony was taken by the respondent.

In considering the errors assigned, three prominent questions present themselves.

First.—Has the defendant in error made out, by proof, the agreement, the specific performance of which is sought by the bill to be enforced ?

Second—If the case stated in the bill is not made out by proof, would the defendant, if his bill embraced the agreement disclosed in the answer and proved by the depositions, be entitled to a specific performance ?

Third—If the defendant is not entitled to a specific performance of the agreement, should the Circuit Court have awarded an issue of *quantum dammificatus*, to ascertain the value of permanent improvements, with a view to decree him a pecuniary compensation for these ?

1. We have already said that the depositions taken by the defendant in error, tend to shew an agreement for the sale and purchase of the land in controversy. This agreement was conditional, depending upon the

purchase by the plaintiff of the *Indian reservee*. This purchase was effected; so that the agreement became absolute; yet its terms are not shewn by proof, and as set forth in the bill, positively denied by the answer. It is true that the price agreed to be paid, is proved; but there is nothing in the record from which we can determine what was the credit, the times of payment, and what the amount of each payment. Without satisfactory proof to these points, how is it possible for the Courts to ascertain what was the entire agreement between the parties—and unless this shall be known, how can it adjudge its specific execution?

The part performance of a verbal agreement being shewn, proof *aliunde* is admissible to show what the contract was: but part performance can never be held to dispense with evidence of the particular terms of the agreement*—and to authorise a decree for its consummation where these do not appear. [*1Fonb.E. 172]

In the case of *Rowton* vs *Rowton*†—it was the opinion of the Court of Appeals of Virginia, that where the evidence of a verbal agreement is contradictory, the statute of frauds is especially applicable. [†1 Hen. & Munf. 91.]

In the case of *Parkhurst* vs *Van Courtlandt*,‡—it was held, that certainty in the proof of the terms of a parol agreement for the sale of lands, was essential to authorise a decree for a specific performance.— That, *the Court cannot, and ought not to make bargains for parties, or to determine what one party ought to give and the other to take; and in the case of a lease, whether it ought to be for years or for life or lives, or in fee, and the amount of the rent, and whether payable in money or in produce, and in what periods.* [‡1John.Ch R. 281.]

If there is uncertainty as to the essential terms of written contracts, Chancery will not decree a specific execution. Do not the same principles and authorities which inhibit its interference in such cases, apply with at least equal force to agreements resting in parol.—*Jonham vs Child.**

The learned Chancellor, in the case of *Parkhurst et al.* vs *Van Courtlandt,* remarks, that "the general language of the books is, that performance will not take a parol agreement out of the statute, unless the terms of the agreement distinctly appear, or are made out to the satisfaction of the Court."† To the same effect is the case of *Phillips* vs *Thompson*: in which case it is said to be well settled, that "if a party sets up part performance, to take a parol agreement out of the statute, he must shew acts unequivocally referring to, and resulting from, that agreement."— Again: "There must be no equivocation or uncertainty in the case;" if the existence of the contract be not made out by clear and satisfactory proof, *as laid in the bill,* there can be no decree for its enforcement. And further, it is not enough that there be evidence of *some* agreement, but it must be unequivocal and satisfactory evidence of the particular agreement charged in the bill. The case of *Parkhurst, et al.* vs *Van Courtlandt* was taken to the Court of Errors, by appeal, and the Chancellor's decree there reversed: but without unsettling the principle, that the agreement relied on, must be clearly and satisfactorily proved.‡

In equity, as at law, it is well settled, that the *allegata et probata* must correspond; and however strong may be the proof of a complainant, and how-

*1 Bro. 92.

†Amb. 586
1 Ves.221.
2 Sch. &
Lef. 1 and
459—3Atk
503–6 Ves.
470, '1.

4 Johns.
R. 15.

ever clear his title to the aid of the Court, it is wholly immaterial if the allegations of his bill are not in harmony with his testimony—it cannot be received and regarded by the Court.—*Drury, et al.* vs *Conner, et al.**

In regard then to the first question, we think it clear that the defendant in error has failed to make good the case stated in his bill, by proof, and that the agreement, shewn by the witnesses for the plaintiff, is not admissible, to make out the defendant's case; for the reason that the allegations of the bill are unsuited to it.

2. Let it be repeated that the contract proved by the plaintiff's witnesses required the defendant to pay him two hundred dollars at the time of the certification of his contract of purchase from the Indian, and two hundred dollars in some short time thereafter. If time be not an essential ingredient of the contract, the defendant might, upon submitting to perform his part of it, call on the plaintiff in equity, to execute it.

Time may be of the essence of the contract, and always is, where it is made so by its terms; and some able Chancellors have considered it to be so in every case in which the party who seeks relief has been in default himself, without any just excuse, or any acquiescence or subsequent waiver by the other party.†

Lord *Loughborough*, in the authority last cited, remarks—" There is nothing of more importance, than that the ordinary contracts between man and man which are so necessary in their intercourse with each other, should be certain and fixed; and that it should be certainly known, when a man is bound, and when

* 6 Har. & J. 288; also 4 Eng. Con C R 544

† 2 Story's Eq. 85,'6, note 1.---1 Johns.C.R 370---4th Ves. 589, n---7 Ves. 265---4th Bro. 469.

not. There is a difficulty to comprehend how the essentials of a contract should be different in equity and at law. It is one thing, to say the time is so essential, that in no case, in which the day has been, by any means suffered to elapse, the Court would relieve against it, and decree performance. The conduct of the parties, inevitable accident, &c., might induce the Court to relieve. But it is a different thing, to say the appointment of a day, is to have no effect at all; and that it is not in the power of the parties, to contract, that if the agreement is not executed at a particular time, they shall be at liberty to rescind it. In most of the cases, there have been steps taken." Again,—" I want a case, to prove, that where nothing has been done by the parties, this Court will hold, in a contract of buying and selling, a rule, that the time is not an essential part of the contract. Here, no step had been taken, from the day of the sale, for six months after the expiration of the time at which the contract was to be completed. If a given default will not do, what time will do? An equity arising out of one's own neglect! It is a singular head of equity."

This argument, alike distinguished for its perspicuity and force, induced the Lord Chancellor to conclude, in that case, that, as the vendor had omitted, for six months, to complete the purchase, he must be considered, after such a long default, to have abandoned the contract.

As the principle embraced in the question we are examining has never been very elaborately considered in this Court, it may be proper to inquire how it stands upon authority.

In *Milward vs Thanet*,* the master of the rolls re- *5Ves.720
marked, that Lord *Kenyon* was the first who oppos- n.
ed the idea, that a party might come at any time to
enforce an agreement; and observes, that then, it
was well understood, that a party cannot come into
equity, for a specific performance, unless he had
shewn himself ready, desirous. prompt and eager.
In *Guest vs Hornfray*,† the delay was but three †5 ib. 818.
months, yet, in a bill filed by the vendor, to compel
the vendee to accept the title, and perform his part
of the agreement, the Court held, that as the com-
plainant had not shewn that he had done all that he
could, to be ready to carry the agreement into effect,
at the time prescribed by its terms, and as the delay
had never been approved or acquiesced in, the bill
was dismissed.

The case of *Alley vs Deschamps*,‡ is analagous, not ‡13 ib.224
only in principle, but in its circumstances, to the case
before us. There, the purchaser filed a bill for a spe-
cific performance.    The purchase money was to be
paid in instalments; the purchaser was put into posses-
sion. He paid one hundred pounds upon the footing
of the contract. The bill was filed before the last
instalment became due. The respondent, in his an-
swer, stated that he considered the contract as aban-
donded. The Lord Chancellor observed, that he.
should take it, that the agreement had not been re-
linquished; that the complainant had not consented
to rescind it, yet, under the circumstances, there was
no pretence for decreeing a specific execution; that
the bill, under the circumstances, could not be en-
tertained. It was not permissible, for parties to lie
by, to ascertain whether the contract was likely to

prove a gaining or losing one, and either claim its performance or abandon it, according to the event—considering the lapse of time as nothing.—That but one small payment was made, and nothing proposed, until, by a subsequent event, the premises became much more valuable, than at the time the contract took place.

In the cases of *Pincke vs Curtis,** and *Fordyce vs Ford,*† the delay was brief and acquiesced in by the parties who endeavored to take advantage of it. In the last case, Lord *Alvanley* observed, that the Court would not lend its aid to enforce the contract in favor of a party guilty of gross negligence; and that it must not be understood, from that decision, that a man was to have his own time to perform his contract.

Lord *Hardwick* held, that it was the duty of a Court of equity to relieve against lapse of time in the performance of a contract, and *especially where the non-performance has not arisen by the default of the party seeking to have a specific performance.*‡ It may also be laid down as correct, that where one has been backward in performing his part of the agreement, Equity will not decree a specific performance in his favor.§

In the case of *Benedict vs Lynch,*‖ the learned Chancellor says, it may then be laid down as an acknowledged rule in Courts of Equity, (and so the rule is considered in elementary treatises on this subject¶) that where the party who applies for a specific performance, has omitted to execute his part of the contract, by the time appointed for that purpose, without being able to assign any sufficient justifica-

*4 Bro 329
†4 ib. 494

‡1 Ves 450

§5 Viner,
538
‖1 Johns.C
R. 370

¶Newland
on C. 242,
Sug L of
Ven. 268

GOODWIN *vs* LYON.

tion or excuse for his delay, and when there is no-
thing in the acts or conduct of the other party, that
amounts to an acquiescence in that delay, the Court
will not compel a specific performance.    The rule
appears to be founded in the soundest principles of
policy and justice.   Its tendency is to uphold good
faith and punctuality in dealing, &c."

In the case of *Doloret vs Rothschild*,[*] the Vice [*1 Con. E. Ch. R. 302]
Chancellor, in delivering his opinion, says—"Where
a Court of Equity holds that time is not of the es-
sence of a contract, it proceeds upon the principle,
that having regard to the nature of the subject, time
is immaterial to the value, and is urged only by way
of pretence and evasion.    But that principle can
have no application to a case like the present, where,
from the nature of the subject, the value is exposed
to daily variation, and a contract which was disad-
vantageous to the plaintiff, on the first of February,
and would therefore be declined by him, might be
highly advantageous to him on the second of Febru-
ary."   In this case it is also supposed that there
may be a conditional waiver of the time; and un-
less the condition has not been complied with, the
party insisting on time is not precluded.

We are aware that there are adjudged cases, in
which it is laid down that time is never of the es-
sence of a contract, in equity, unless made so by ex-
press stipulation.    As, where it is agreed, that one
or both the parties shall do such an act or acts, and in
the event of a non-performance, that the agreement
be void.    These cases can not be adhered to at this
day—they are incompatible with that morality which
should be observed in the performance of contracts;

and are overruled by the weight of opposing authority.

The proof shows, that at least eight or ten months were suffered to elapse, after the plaintiff's purchase from the Indian was certified, (and when the defendant should have paid him two hundred dollars,) before he made an offer to pay him any part of the sum agreed as the value of the land ; and then only proposed to make a payment of two hundred dollars, if a deed was executed, conveying to him the title. The defendant was obliged, by his contract, to have paid four hundred dollars, before he could demand a title, (no time being fixed, when it should be made.) The notes of Steed, which, by agreement of the parties are copied, into the record, as part of the evidence, are for one hundred dollars each, and are payable several years after the contract was entered into, and nearly as long after defendant's note to the plaintiff, for one hundred dollars, became due. The defendant alleges that these notes were received in part payment of the purchase money for the land.— The answer denies it, and insists that they were received as a collateral security for defendant's note to the plaintiff. The answer, in this particular, both negatives and avoids the allegations of the bill ; but, the matter of avoidance occurring simultaneously with the reception of the notes, it must be taken to be part of the *res gestæ*, and as such, evidence for the plaintiff. According to this view of the case, the defendant has not moved in the performance of his part of the contract, either by paying money, or offering to pay, but with a requisition he could not make.

Again—the proof shews, that the land, at the time of the purchase from the Indian, was not worth more than from three to five hundred dollars, so that the defendant's contract was on *fair terms*, only, without being greatly advantageous to him—consequently, his anxiety to consummate it could not have been so great, then, as at the time of the exhibition of his bill, when it had advanced in value at least one hundred per cent. The price of lands, in this country, we know, as a matter of history, has increased rapidly, and to an enormous extent, in the last four or five years.

Had the defendant have performed the agreement, on his part with punctuality, as events have shewn, the bargain would have been advantageous to him; and, in all probability, would not have been disadvantages to the plaintiff, who, it seems, was engaged in speculation in Indian lands, and could have reinvested his money to profit. But, it can not be indured, that the defendant should lie still, until he ascertains that his bargain is beneficial, and then, by offering to perform his part, enforce its execution.

So, that whether we adopt the rule as to time, in the unqualified terms in which it was laid down, in *Benedict vs Lynch*, or take it as applied in *Doloret vs Rothschild*, it is clear, that it is not competent for the defendant to enforce the agreement set up in the answer. We think, however, that the true rule on this subject is as we have quoted it from the former case. —It is one which can work injury to no person, and is calculated to advance integrity and punctuality in dealing.

4P.                    40

Third.—Having shewn that the defendant in error was not entitled to a decree for the specific performance of the agreement set out in his bill, because he has failed to prove it—and, that the plaintiff denied it, by his answer, and set up an agreement very different in its terms, and has proved such to have been the agreement of the parties,—and, having shewn, that Equity would not execute this contract, at the suit of the defendant, on account of laches in the performance of his part of it—it remains, to inquire, whether the cause should be remanded, that an issue of *quantum damnificatus* may be awarded.

Where it appears that a contract for the sale and purchase of lands was made, upon the faith of which the vendee took possession and made valuable and permanent improvements, though he can not coerce its specific execution in Equity, either because the agreement is imperfect, or its precise terms can not be shewn, the bill should be retained, to decree a pecuniary compensation equivalent to the improvements. If equity did not afford this redress, the vendee would sustain an injury, for which he would be remediless, or else have a remedy at law, at best doubtful and inadequate.

Chancellor *Kent*, in the case of *Phillips vs Thompson*,[*] in examining this subject, says—" I have no doubt of the jurisdiction of this Court over this case, and that it can cause the damages to be assessed either by a reference to a master, to inquire into, and report them, or by an issue of *quantum damnificatus.* The case of *Denton vs Stewart*, before Lord *Kenyon*, when master of the Rolls, was to this effect.[†] That

[*] 1 Johns. Ch. R. 131

[†] 1 Fonb 38 n. y. and 165, n. b. and 1 Ves. jr. 329.

case was afterwards approved nd followed by Sir William *Grant*, in *Greenaway vs Adams.*"* [*12Ves395]

Again—" The cases are numerous, in which the Court of Chancery has caused damages to be assessed, either by an issue, or by a master, at his discretion.†—*Hedge vs Everard;‡ Cudd vs Rutter;§ Errington vs Aynesley.*‖ I believe, the more usual course, where the damages are not a matter of mere computation, is by awarding an issue; and, under the circumstances of this case, I deem it the more advisable method."—*Parkhurst vs Van Cortlandt.*¶ [†2Fonb441 ‡1 Eq. Ca. Ab.18,pl.7 §1 P.Wms 570. ‖2 Bro.341 ¶ 1 Johns. Ch.R. 273; 2 Scho. & Lef. 513.]

If nothing more appeared in the cause, relating to an agreement, than what is stated in the bill, and what may be gathered from the depositions taken by the complainant—(in as much as these shew some agreement, yet so imperfect that it can not be enforced specifically,) we should remand the cause, that an inquiry might be made of the value of improvements made in faith of its performance. But, when we look into the answer, and the depositions taken to sustain it, the case assumes a different aspect. The contract which they make out, disproves the case stated by the bill, and shews an agreement not imperfect in its terms, but one that can not be enforced at the suit of the defendant, because of his neglect, in refusing to comply with the stipulations, on his part. The contract, then, being relinquished by the defendant, the parties are to be remitted back to their rights, as if no contract had ever been made. This being the predicament of the defendant, caused by his own neglect, let us inquire if he had entered without a license, or even by permission, and made improvements, if he could recover their value.

A party can not claim a compensation for a trespass by himself, on the ground, that the party against whom it was committed, had derived a benefit. And there is quite as little pretence in favor of a claim to compensation, where one, entering under a naked license, makes improvement. The defendant comes into Court, thus circumstanced,—he can not insist on an agreement, either perfect or imperfect, under which he expended money or labor, and consequently having sustained no damages which the plaintiff can be called on to compensate, an issue cannot be directed to enquire of the extent of them.

If the contract be as the plaintiff has maintained it to be, or as the defendant insists it was, in either case our decree may operate hardly upon the defendant. Be this as it may, we do not sit here to mould and change the principles of law, so as to prevent the least amount of individual injury in each case, but we endeavor to ascertain and apply these principles, so as to be most promotive of justice in all: esteeming it far better, that, in a few cases, loss should be sustained, than that general principles, intended to control the affairs of an entire community, should be made to bend.—*Jackson vs Sill*,[*] (by Mr. Justice *Thompson.*)

[*]11 Johns. 220.

The result of our reflections is, that the decree of the Circuit Court must be reversed, and the bill dismissed, without prejudice to an action or actions at law, or bill in equity, to recover back money or property paid or delivered upon the faith of an agreement, for the purchase of the land in dispute.

And, the defendant, failing to establish a right, it is further ordered and decreed, that he pay the costs of this Court, and the Circuit Court.