DUREN and WALKER VS PARSONS.

*Of enforcing a co-partnership in the purchase of lands, in Chancery.*

1. A complainant in Chancery, on a bill, filed for the object of establishing an agreement, for the purchase of lands, in co-partnership, can have no relief, where the allegations of the bill do not correspond with the proofs.

2. Chancery will dismiss a bill, filed to render defendants accountable for the proceeds of a sale of lands, alleged to have been purchased in co-partnership, where the terms, of a written agreement for such purchase, had never been complied with by the complainant; where it is impossible to carry such agreement into effect, and where, whatever rights a complainant had under it, had been merged in a new agreement, which he refused to sign, and with the terms of which, complainant had failed, altogether to comply.

3. As where one filed a bill, charging that a written agreement had been entered into between himself and others, for the purchase of lands in co-partnership; and that the defendants had refused to perform their part of the agreement, but had combined with others, strangers to the first contract, to commit a fraud upon his rights, by entering into, and actually effecting an agreement for the purchase of the said lands:—and it appeared from the answers and proofs, that the first agreement had not been, and in fact, could not be, consummated, and that the complainant, had neglected to comply with his part of it, and that complainant had assented to the second agreement, and was considered a party to it, but refused to sign the writing entered into between the parties, on the ground, that as an officer of government, he could not consistently do so: and

5 P.    44.

it further appeared, that the complainant had the privilege of becoming a party to this second agreement, but failed to furnish his quota of the funds, and in fact, finally abandoned the concern. It was holden—that while from the agreement set forth in the bill, the case was of that character, which would not authorise a Court of Chancery to dismiss it, for want of Equity,—yet upon the merits of the cause, the complianant was entitled to no relief; and the bill should be dismissed.

This was the case of a bill in Chancery, determined in the Circuit Court of Talladega county, and filed by Benjamin S. Parsons. The purpose of the bill was to render the defendants to it, accountable to the complainant, for an aliquot part of the proceeds of a sale of certain town lots, in the town of Talladega, in the original purchase of which, from an Indian reservee, complainant claimed to be a copartner.

This bill stated, that by the last treaty made between the United States and the Creek tribe of Indians, east of the Mississippi, one Joseph Bruner, a colored man, became entitled to a half section or three hundred and twenty acres of land, and was the fee simple owner of the same, which in conformity with the treaty, was selected by him at the old Talladega battle-ground, in the county of Talladega, on which half section, the seat of justice for the county of Talladega was by the proper authorities subsequently located, and which location was made after the interest of complainant as set forth in the bill was secured. That the said half section or reservation, was known on the survey of the government of the United States, as the south

half of section twenty-nine, township eighteen,
range five, east: That on the first day of Novem-
ber, one thousand eight hundred and thirty-two, af-
ter the title had vested in Bruner, under the treaty,
a joint purchase was intended and agreed upon,
from Bruner, by William Walker,. Jesse Duren,
and the complainant, in pursuance of which on the
same day, Duren in his own name, but acting for
himself, Walker and complainant, jointly and
equally, made an agreement, for the purchase of
the reservation with Bruner, by which agreement
Bruner promised Duren to convey, or cause to be
conveyed to him, in fee simple, the said reserva-
tion, in consideration of which, Duren undertook
in his own name, [but for the joint benefit of him-
self, Walker and complainant,] to pay Bruner
two thousand five hundred dollars, of which sum
Duren then paid Bruner nine hundred dollars and
a horse:—That on the same day, and before the
contract was entered into between Duren and Bru-
ner, but in contemplation of it, and having an immediate reference to it, at the instance of Walker,
Duren and complainant, acting under their agree-
ment to purchase the reservation jointly,—Bruner
by his deed, or power of attorney, of the same date
authorized Walker to convey the reserve to Duren
in fee, which power of attorney was delivered by
Bruner to Walker.

That after that transaction, also, on the same
day Walker in view of the whole arrangement,
and for the purpose of binding Bruner to Duren,
for the joint benefit as aforesaid, did, under the
power of attorney, execute and deliver to Duren,

a bond, for the execution of a fee simple *title deed* of the reservation, to Duren, which bond, complainant alleged, to be yet in the possession of Duren, unless it had since been destroyed, without the consent or knowledge of complainant:—After the execution and delivery of the bond, Walker, Duren and the complainant, entered into a written agreement with each other, which was in the words following :

"We the undersigned having agreed with each other, to become connected in the purchase of a reservation of land which is allowed to Joseph Bruner, by a treaty with the Creek tribe of Indians and the United States; we having further agreed to have the same selection of land located at the old Talladega battle ground, and then to lay off a town, in the sale and proceeds of which, we are all to be equal, in purchase and in profits, at some other suitable time, we are to enter into a new and more proper contract. Given under our hands, this first day of November, eighteen hundred and thirty-two.

   [Signed]   WIILLIAM WALKER.

         JESSE DUREN,

         B. S. PARSONS."

This last mentioned agreement, complainant alleged, was by consent of parties retained for safe keeping, and for the mutual benefit of the signers, by Walker, who had still possession of it. Complainant prayed that it might be taken as an exhibit, and Walker ordered to produce it.

The bill further stated, that on the same day, in

pursuance of the agreement, Walker and complainant, separately, made and delivered, their notes of hand, respectively, to Duren, for the payment to him, of their respective and equal portion of the purchase money, [as Duren was liable in his own name, to Bruner,] which notes complainant thought, were yet in the hands of Duren. At the time of the delivery of these notes, it was expected by Walker, Duren and complainant, that money belonging to complainant, to an amount, greater than complainant's note to Duren, called for, would shortly be paid, by an agent of the government of the United States, in behalf of complainant, to Walker: It was also, at the same time, verbally agreed, that Duren, whenever he might require payment of the note of complainant, might apply to Walker for the money, if he chose to do so, and that he never had so applied: That early in the year, eighteen hundred and thirty-three, money to a greater amount than the note of complainant called for, came into the hands of Walker, and remained there, until September of the same year. In the last mentioned month and year, complainant went to Montgomery, to get money to pay the note, and on his way called at the residence of Duren, and informed him of the object of his visit to Montgomery, and that on his return, he would call and pay the note. On his return, Duren was absent, and his wife was unable to find the note, which was the reason, payment was not at that time made. Complainant alleged that he was always ready and willing to perform his part of the agreement, and well hoped

that Walker, Duren and Bruner, were likewise so disposed.

The bill charged, that Walker, Duren and certain other persons, viz: William H. Moore, David Connor, Sampson Lane, and Devereaux J. Lane, well knowing the interest of complainant, combined, &c. and without the consent of complainant, either made a new contract with Bruner, or under a modification of the old one, confederated to purchase the reservation, and had excluded complainant from any benefit in the same, and by means of their fraudulent purchase, had procured a patent from the government of the United States, for the reservation. The bill also alleged, that after the complainant's interest was acquired, the seat of justice of Talladega county, was established on the same reserve, and that a town had been laid off on the same, by the confederates, since which period, they had transferred some interest, or pretended interest in the reserve, to certain other persons, viz: To Milton T. M'Guire, H. H. Wyche, James M. M'Cann, James A. Givens and William D. Lovell, who were really, or pretended to be, commissioners of the town, but who, before the origin of their pretended interest, were well acquainted with the interest of complainant: That the confederates and commissioners had made sale of some of the lots in the town, and were preparing to sell many more, from a participation in the benefit of which, they carefully excluded complainant.

The bill prayed for a writ of supœna, and a full developement of all the matters and things stated, from each of the persons named; an account of

sales, &c. and that they might account to complain-
ant for his fair proportion of the proceeds, and that
the just interest of complainant in the reserve, might
be vested in him by a decree of the Court.

The separate answer of William Walker, stated,—
That the matters recited in the bill, in relation to
the grant to Bruner, under the treaty, and the sub-
sequent location of the grant at the old Talladega
battle ground, were correctly set forth : 'Complain-
ant Duren and respondent, did enter into co-part-
nership, for the purposes stated, and respondent
thought the articles set forth in the bill, were sub-
stantially correct:   Respondent was not in posses-
sion of the articles, but believed they were in pos-
session of Duren.   After the formation of the co-
partnership, the co-partners prevailed upon Bruner,
to give to respondent, the power of attorney, ad-
verted to in the bill, a copy of which was appended
to the answer, and to which complainant was a
subscribing witness.   Afterwards, the bond was
executed by Bruner, conditioned to make titles, in
fee simple to Duren, and in the contract, complain-
ant and respondent, were to be interested. But when
some of the co-partners attended before the agent
of the United States, to procure a ratification of
the contract, they were informed that no certificate
would be made, and no approval of the contract al-
lowed, as another company had offered four thou-
sand dollars for the reservation.   Respondent did
not know whether complainant was at the time
advised of this occurrence and difficulty, but it was
fatal to the hopes of the co-partners,—was deemed
altogether insuperable,—put an end to the contract

with the Bruner, and was, with the consent of all the parties, interested, deliberately yielded, and totally abandoned.

The answer further stated, that after the abandonment as aforesaid, an agreement was entered into between Duren, Conner, the two Lanes, Moore and respondent, by which they contracted to buy the land, if selected for a county site, and bound themselves to each other, to be answerable for the profits and loss of the purchase. This contract was entered into with the knowledge of complainant, who agreed to become a party, and to be bound by its provisions; but declined signing the articles of agreement, because he was an officer of the government of the United States, which would not permit him to speculate in Indian lands,—otherwise he appeared perfectly satified, and made no opposition. During the time, in which it was uncertain, whether the county site would be located on the battle-ground, respondent said, he was informed, complainant failed to comply with the terms of the agreement, and finally stated that he was unable to do so; though respondent always considered him a party. Complainant, never by word or deed, induced respondent to believe, that he thought the first contract was not abandoned, or that he was not a party to the last. Complainant himself, voluntarily released his interest in the first contract. Respondent would not have taken the course he did, if complainant had ever doubted the abandonment of the first contract and agreement, and had not agreed to become a party to the second.

Respondent relied upon the abandonment as an

answer to the equity of the bill—proposed his answer as a general demurrer, and prayed to be dismissed with costs.

The answer of Jesse Duren, admitted all that was stated, in the bill, concerning the land and its location; except that it denied that Bruner was the fee simple owner of the land, at the time specified in the bill. About the first of October, eighteen hundred and thirty-two, respondent visited Bruner, for the purpose of contracting with him for the land, and in the contract then proposed by him, Connor, the two Lanes, Walker and respondent, were to be interested. Respondent found complainant at Walker's, where Bruner then lived, and the articles, as set forth in the bill, were at that time signed, as respondent thought,—respondent acting for the Lanes and Connor, as well as for himself. That respondent was acting for the Lanes and Connor, as well as for himself, was well known to complainant, and perfectly understood by him. About the same time, the contract was made with Bruner, and respondent agreed to give him two thousand five hundred dollars, as set forth in the bill, and paid him down, nine hundred dollars, and a horse valued at seventy-five dollars:— and complainant and Walker, gave respondent their notes, payable to respondent, as stated, which were lost.

The answer further stated, that respondent applied to Walker for the payment of the note, given by complainant, out of the funds, which as the bill stated were to come into the hands of Walker, from an agent of the government of the United States,

5 P.     45.

but could get nothing: Respondent was told, complainant had himself, drawn all the funds. The answer admitted that complainant, once called at the house of respondent, stating that he was on his way to Montgomery, where he expected to receive money, but denied that any thing was said of paying the note, and respondent doubted whether complainant called at the house of respondent, on his way home.

About the twentieth of December, eighteen hundred and thirty-two, Connor, Walker, the Lanes, Moore, complainant and respondent, met at the Talladega battle ground, and respondent gave to the parties, a succinct history of the contract with Bruner. Moore was admitted to an interest, and complainant expressed himself well satisfied. A written agreement was entered into and signed, by all the parties, except complainant, who agreed to be bound by its provisions, but declined signing at the time, because he was an officer of the United States government, which would not tolerate him in speculating in Indian lands. Complainant however, agreed to sign the articles as soon as his public duties were closed. Respondent believed complainant was not able to comply with the articles. He did not propose doing so, as long as it remained uncertain whether the county site would be located on the reserve.

The government of the United States required, that the full value of the land should be paid to the vendor, in presence of an agent, and respondent believed a company had offered Bruner, four thousand dollars for the reserve, which rendered it im-

possible to complete the contract at first entered into with Bruner. Respondent, believing the original partnership to be fully ended, and having heard nothing from complainant, touching his willingness or ability to take a share at the increased price, proceeded to make other arrangements. A new contract was made with Bruner, in which Walker, Moore, Connor, the two Lanes, and respondent, were purchasers and co-partners,—and the patent had been obtained in their names.

The answer denied that the last contract was made with a view of defrauding complainant, or injuring him. Respondent verily believed the first contract was rendered void by the regulations of the government, and knew of no interest complainant had in the land, at the time the contract was made, which was approved by the United States' agent. Respondent, so far from being disposed to exclude complainant, declared, that if complainant had attended to the business, had been willing to take an interest in the last contract, and had been willing to advance his share of the price of the land, respondent would have raised no objection to his being interested, but since the last contract, respondent had invariably denied that complainant had any interest, either in the contract or the land.

Respondent proposed his answer as a general demurrer to the bill, and prayed to be dismissed with costs. At the Fall term of the Court, eighteen hundred and thirty-four, on motion to dismiss the bill generally, the same was dismissed, as to all the defendants, except Duren and Walker.

The testimony taken subsequently, stated the following to be the facts of the cause:

The witness, *William H. Moore*, stated that he owned one sixth of the last contract, and knew nothing of the first. He took Bruner to the office of the certifying agent, for the purpose of procuring from him a certificate, which he refused to grant, alleging that it was not one of the contracts, falling within the time of the treaty, and requiring the President's approval.

Afterwards, orders were received stating, that this land could only be sold as other reservations, upon which Duren was dispatched for Bruner, who refused to comply with his contract, stating that he could get, four thousand dollars for the land. The price was given, and the contract certified to Duren, Connor, the Lanes, Walker and the witness. Witness understood from complainant, that in the two thousand, five hundred dollar contract, he, the complainant, was to be jointly interested, with the other co-partners. The contract with Bruner, remained incomplete, for several months, but after the law passed, authorising the selection of the county site, the company met, with the exception of complainant. Witness was requested to write to complainant, which he did. Complainant had refused to sign the articles, because he was an officer of the United States, and would be obnoxious to censure, and had paid nothing towards the purchase.

In the letter witness wrote to complainant, he desired him to come down and pay his proportion, by a certain day, viz: before the election, or he

would not be considered a member. In reply to
the letter, complainant stated, that it was uncer-
tain if he came down, whether he would be able
to pay his part of the purchase money. If he did
not come, he desired witness to act for him and do
as he pleased:—To take the share himself or make
any other disposition of it. Complainant came
down after the time prescribed in the letter of wit-
ness had expired, and then told witness he could
not raise more than forty dollars, and gave wit-
ness a power of attorney to complete his engage-
ment, and take his share. This the company re-
fused to permit, and after four or five days the pow-
er of attorney was revoked. This was several
months before the purchase from Bruner was com-
pleted. Before the last contract was certified,
complainant claimed an interest in the two thou-
sand five hundred dollar contract.

*David Connor*, a witness for the complainant,
stated, that Duren and himself made the purchase
from Bruner at two thousand five hundred dollars.
Moore, Duren, the Lanes, Walker and complain-
ant were equally interested. After the other com-
pany offered four thousand dollars, and the certify-
ing agent refused to certify the first contract, the
company agreed to give four thousand dollars, as
exertions were making to have the county site, loca-
ted on it. The complainant refused to sign the
articles, on account of his being an officer, &c. but
witness understood he was to have an interest, if
he would pay his proportionable part. Witness un-
derstood that complainant was aware of the pur-
chase, and that in order to avail himself of any

benefit, he must advance a portion of the purchase money. He made no advance, nor did he come forward to close his interest. Complainant could have had an interest, if he had complied with the terms of the contract, before the selection of the county site.

*Hubbard A. Wyche,* a witness for complainant, who was one of the commissioners for the county of Talladega, appointed by authority of the act of the Legislature, approved, December eighteenth, eighteen hundred and thirty-three, stated,—that John H. Rooker, Esq. was employed to make calculations of the amount of sales of lots in the town of Talladega, and that according to those calculations, the amount of the sale of the lots, and fractional lots, which lie in the bounds of the half section, bought of Bruner, was nineteen thousand, two hundred and twenty-four dollars, forty-four cents and eight mills, which calculation, witness supposed to be correct.

Witness was one of the attorneys for defendants, and knew nothing further which he felt at liberty to disclose.

*Leonard Tarrant,* a witness for complainant,— was certifying agent for the United States, and stated that, according to the custom of the office, the whole amount was paid to Bruner, at the time of the sale, and before the certificate was granted; but that Bruner was informed, he might return at any time, to the vendees, any amount he had previously received from them, in part payment.

The depositions having been returned into Court, the cause came on for final hearing, at a subsequent

term, when the Chancellor below, in his decree pronounced upon the merits, said:

1. He thought the first material question was,—whether complainant ever was a co-partner in the purchase of the reserve from Bruner. It seemed to the Court, that the fact of his being a co-partner, was sufficiently evinced by the original transaction and contract formed between complainant, Duren and Walker, and that complainant had, by no act, forfeited or relinquished his interest, or consented to a rescission: What was said by the respondents, Duren and Walker, of an abandonment of the contract on the part of complainant, being affirmative matter on their part, the Court thought, ought to be supported by evidence. If complainant was by the other co-partners viewed as having abandoned and relinquished the contract,—it was manifest that complainant himself never contemplated such a step, nor would it answer to permit their judgment in this instance to control his rights.

2 If complainant was in reality a co-partner in the purchase, and has by no act of his own, forfeited his claim to be so considered, what interest is he entitled to? Four thousand dollars had been paid, for the reservation, and the Court thought that complainant, by his conduct, had ratified or approved of, the introduction of the new members, into the co-partnership, and if that was the case, his claim could not be permitted to extend to more than one seventh of the purchase, and consequently one seventh part of the proceeds of the purchase.

3. The lands had passed out of the hands of the company, into those of innocent purchasers, and

the complainant could have no relief against them, nor did he ask it. The lands had been made the subject of merchandize, and as such must be accounted for. The lots, according to the evidence, had sold for nineteen thousand, two hundred and twenty-two dollars, and it might be presumed, upon this statement of the transaction, the Court could now make a final decree, but when it was considered, that expenses had been doubtless incurred, interest accrued, and probable losses sustained, it was manifest that further information of those details was wanted, to enable the Court to order an equitable and final adjustment. The case was therefore referred to the Master, with definite instructions, to collect the facts, and prepare a report to be presented at the next term of the Court, ascertaining the precise amount which would be due to complainant, after those things which ought to be deducted, estimating his claim at one seventh of the nett proceeds of the sales of the land.

4. The Court acknowledged some embarrassment arising from the attitude of the case, in being able to make up its opinion, as to the persons from whom complainant was entitled to recover. A demurrer had been sustained, the authority of which the Court felt no disposition to impugn, which left but two of the original defendants before the Court. The Court was however, compelled to act upon the materials left, and therefore decreed that the defendants, Jesse Duren and William Walker, pay such sum to complainant, as the report of the Master based upon the principles of this decree, will authorise.

At the next term of the Circuit Court, the Master presented his report, by which, after being fully informed, of all the matters submitted to him by the Court, and making the necessary estimates and deductions, he found that upon the principles of adjustment contained in the decree of the Court, which were authoritatively proposed to him, as the basis of his proceeding, the complainant's share of the nett proceeds of the sale of the lots would be two thousand and six dollars and thirty-eight cents, and the report not being excepted to by either party:   It was thereupon adjudged and decreed, the complainant recover of defendants, Duren and Walker, the sum of two thousand and six dollars, and thirty-eight cents, and the costs of suit.

The case was argued before this Court, by *Peck & Clark* for the plaintiff in error, and *Crabb* and *Chilton*, contra.

GOLDTHWAITE, J.—The respondents, Duren and Walker, against whom the bill was retained, and a decree rendered, insist, that as to them also, it should have been dismissed for want of equity.

There is nothing in the statement of the case, as made by the complainant's bill, which induces the Court to arrive at this conclusion.   It does not appear, that fraud, imposition or undue advantage, were practised or attempted to be practised on any one, nor is the contract, as set out and stated to have been entered into, between the complainant and respondents, of such a character, that a Court

5 P.          46.

of Equity can, according to established rules, refuse to take cognizance of it. There was, therefore, no error in refusing to dismiss the bill for want of Equity, as against these respondents.

It is further insisted, that on the final hearing, a decree should have been pronounced, dismissing the bill, on the merits of the cause; and of this opinion is this Court.

The contract which was made between the complainant and respondents, was, according to complainant's own shewing, entered into in reference to the agreement, which had before been entered into with Bruner, for the purchase of his right, to a reservation of a half section of land, and for which the sum of twenty-five hundred dollars was to be paid. The contract so far as the action of *Bruner* could give it validity, was complete, and he had received from Duren, in part payment, nine hundred dollars and a horse. Walker and the complainant, had each given their notes to Duren, for their proportion of that sum, and the complainant had designated a fund, out of which payment was to be made.

These circumstances, stated by the complainant, are conclusive to shew, that the written agreement set out in the bill, however ambiguous in terms, was intended by all the parties, to act on the lands which they then supposed they had purchased the right to, and it had no reference to any *future* agreement to be concluded between them and Bruner. Nor does the complainant mention in his bill, that he was a party to any contract, or agreement, other than the one before stated. The answers of

both respondents, admit, distinctly and explicitly, the agreement charged by the complainant, but insist, that in consequence of difficulties which were interposed by the agent of the United States, who refused to certify the contract under the provisions of the treaty of eighteen hundred and thirty-two, it was abandoned; and, (as stated by Walker,) with the full knowledge and assent of the complainant, and a new one entered into, by which it was agreed to pay Bruner, four thousand dollars; and four other persons were admitted as partners. To this new agreement, the complainant was a party, but refused to sign his name to, or become bound by written articles, alleging as a reason, that from peculiar circumstances, he did not wish to have the reputation of speculating in Indian lands; but a condition was annexed to his joining the parties in this new contract with Bruner, which was, that he should signify his assent, and pay his share of the purchase money, by a certain time. It is also alledged, that he entirely abandoned the contract, and never paid any thing towards the sum paid to Bruner.

These statements in the answer are fully supported by the evidence of the witnesses, Moore and Conner, who were also parties to the second contract. If the second contract with Bruner, was made, as it is proved to have been made, and the complainant became a party thereto, although his interest might now remain, and had never been abandoned by him, yet on the well known rule so often recognised and enforced by repeated decisions of this Court, he could have no relief, because his allegations do not correspond with the proof.

(*Morgan vs Crabb*, 3 Porter, 470.   *Goodwin vs Lyon*, 4 Porter, 297.)

But the case need not be placed on this foundation, though sufficiently firm. All interest in the second contract, was forfeited by him, by reason of his not complying with the terms, on which he was alone to be permitted to participate in it. The evidence is also strong and persuasive, to shew, that he reluctantly relinquished and abandoned all interest under the contract, for he wrote to Moore, that it was uncertain, if he could meet the other parties at a place appointed, or, if he came, whether he could pay the money. He did not come to the meeting, and afterwards told the witness, that he could raise no more than forty dollars, and gave him a power of attorney to conclude his engagements with the company, and to take his share.— This the others refused to permit, and the power of attorney was shortly afterwards revoked.

The respondents seem always before the final selection of the land, as the site for the Court house of Talladega county, to have been willing to recognise the complainant as a partner: provided, he would sign the agreement entered into and signed by the others, and pay his proportion of the purchase money; this he has never done, nor does the evidence in the case establish a readinss, willingness or ability so to do.

In any view which can be taken of this cause, we think that on the final hearing, the bill should have been dismissed, and for this error the decree of the Circuit Court is reversed, and here rendered, dismissing the said bill with costs.

HOPKINS, C. J. not sitting.